United States District Court
Southern District of Texas
**ENTERED**
November 19, 2026
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FRONTIER MEDICAL PROPERTIES, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-25-3857 |
| | § | |
| AMGUARD INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Frontier Medical Properties, LLC ("Frontier Medical") and 837 Interests, LLC, brought this action against AmGUARD Insurance Company ("AmGUARD") alleging claims for violations of Chapters 541 and 542 of the Texas Insurance Code, breach of contract, statutory interest, breach of duty of good faith and fair dealing, punitive damages, and violations of the Texas Deceptive Trade Practices Act ("DTPA").[1] Pending before the court is Defendant AmGUARD Insurance Company's Motion for Final Summary Judgment ("AmGUARD's MSJ") (Docket Entry No. 28). For the reasons stated below, AmGUARD's MSJ will be denied in part and granted in part.

---

[1]Plaintiffs' Amended Complaint & Jury Demand ("Amended Complaint"), Docket Entry No. 13, pp. 10-14 ¶¶ 30-54. All page numbers reference the pagination imprinted at the top of the page by the court's Electronic Case Filing system.

## I. Background

### A. The Policy

On November 5, 2023, AmGUARD sold an insurance policy to Frontier Medical providing over $7,600,000 in coverage for Frontier Medical's property located at 837 Cypress Creek Parkway, Houston, Texas 77090 ("the property").[2]

### B. The Derecho

On May 16, 2024, a Derecho struck Frontier Medical's property.[3] The Derecho caused damage to the property's "roof, windows, and exterior, [which] permitt[ed] water intrusion through a storm created opening, further damaging sensitive medical equipment and interior property."[4] Frontier Medical alleges that the Derecho caused $1,870,586.87 in damages to its property.[5]

On June 18, 2024, Frontier Medical filed a claim for its losses with AmGUARD.[6] AmGUARD retained a field adjuster from Pilot Catastrophe Services, Inc., who inspected the property on June 25, 2024.[7] On August 1, 2024, the field adjuster prepared a report determining that

[2]Id. at 2-3 ¶¶ 5-6.

[3]Plaintiffs' Response to Defendant's Motion for Summary Judgment ("Frontier Medical's Response"), Docket Entry No. 32, p. 6.

[4]Amended Complaint, Docket Entry No. 13, p. 3 ¶ 10.

[5]Frontier Medical's Response, Docket Entry No. 32, p. 6.

[6]Id.

[7]Id.

the damage was either the result of wear and tear or improper roof installation and determining that the property sustained no wind damage.[8] The field adjuster reported its findings to AmGUARD.[9]

AmGUARD sent Frontier Medical two separate letters denying its claims related to the Derecho: one on July 2, 2024, denying coverage for Frontier Medical's MRI machine;[10] and one on September 4, 2024, denying coverage based on the field adjuster's findings.[11]

### C. Hurricane Beryl

On July 8, 2024, during the adjustment of Frontier Medical's Derecho-related claim, the property was damaged by Hurricane Beryl.[12] Frontier Medical alleges that Hurricane Beryl only exacerbated the existing damage at the property caused by the Derecho.[13] On July 15, 2025, field adjusters from AmGUARD and Haag Engineering, Inc. inspected the property for Hurricane Beryl damage.[14] Plaintiff alleges that AmGUARD "relied on prior investigations from the May Derecho and June 18 storm to deny coverage for" damage from Hurricane Beryl.[15]

---

[8]Id.; Amended Complaint, Docket Entry No. 13, pp. 6-7 ¶ 19.

[9]Frontier Medical's Response, Docket Entry No. 32, pp. 6-7.

[10]Amended Complaint, Docket Entry No. 13, pp. 5-6 ¶ 16.

[11]AmGUARD's MSJ, Docket Entry No. 28, p. 7.

[12]Amended Complaint, Docket Entry No. 13, p. 4 ¶ 13.

[13]Id.

[14]Id. at 9 ¶ 28.

[15]Id. at 9-10 ¶ 29.

**D. Legal Action**

On May 12, 2025, Frontier Medical sent a pre-suit demand letter to AmGUARD providing an outline of its claims and damages, quantifying its loss, and offering to waive a formal claims for attorneys' fees if the contractual amounts were paid promptly.[16] AmGUARD acknowledged receipt on June 13, 2025.[17]

On August 15, 2025, Frontier Medical and 837 Interests, LLC brought this action against AmGUARD alleging violations of Chapters 541 and 542 of the Texas Insurance Code (Counts 1 and 2), a breach of contract claim (Count 3), a claim for statutory interest (Count 4), a breach of duty of good faith and fair dealing claim (Count 5), a claim for punitive damages (Count 6), and violations of the DTPA (Count 7).[18] On October 3, 2025, Frontier Medical amended its original complaint.[19]

On July 17, 2026, AmGUARD filed its Motion for Summary Judgment, arguing that Frontier Medical's breach of contract claim and extra-contractual claims against it should be dismissed as a matter of law.[20] Frontier Medical filed a response on August 7, 2026, and on August 17, 2026, AmGUARD filed its reply in support of its MSJ.[21]

---

[16]Id. at 9 ¶ 26.

[17]Id. ¶ 27.

[18]Plaintiffs' Original Complaint & Jury Demand, Docket Entry No. 1, pp. 9-13 ¶¶ 24-49. Plaintiff, 837 Interests, LLC, has been dismissed from this action. Order of Dismissal, Docket Entry No. 42.

[19]Amended Complaint, Docket Entry No. 13.

[20]AmGUARD's MSJ, Docket Entry No. 28, pp. 11-15, 16-17.

[21]Frontier Medical's Response, Docket Entry No. 32; Defendant AmGUARD Insurance Company's Reply in Support of Motion for Summary Judgment ("AmGUARD's Reply"), Docket Entry No. 33.

## II. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact is or is not genuinely disputed must support the assertion by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). Summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). "[T]he burden on the moving party may be discharged by 'showing'— that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Id. at 2554. "The burden shifts to the non-moving party to show, with competent evidence, the existence of a genuine dispute of material fact." Miller v. Michaels Stores, Inc., 98 F.4th 211, 216 (5th Cir. 2024). "'The burden on the nonmoving party is not a heavy one; the nonmoving party simply is required to show specific facts, as opposed to general allegations, that present a genuine issue worthy of trial.'" Swope v. Columbian Chemicals Co., 281 F.3d 185, 197 (5th Cir. 2002) (quoting 10A Wright, Miller & Kane, Federal Practice and Procedure § 2727, at 490 (3d ed. 1998)).[22] But "'[a] mere scintilla of evidence is insufficient to present a question for the jury.'" Rex Real Estate I, L.P. v. Rex Real Estate Exchange, Inc., 80 F.4th 607, 616 (5th Cir. 2023).

The court "must 'view all facts and draw all reasonable inferences in [the nonmovant's] favor.'" Crawford v. Metropolitan Government of Nashville and Davidson County, Tennessee, 129

[22] See also 10A Wright, Miller & Kane, Federal Practice and Procedure § 2727.2, at 501 (4th ed. 2016).

S. Ct. 846, 851 n.2 (2009). The court "may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2110 (2000).

"[E]vidence may be considered on summary judgment provided '[its] contents can be presented in admissible form at trial[.]'" Ford v. Anderson County, Texas, 102 F.4th 292, 325 (5th Cir. 2024) (per curiam) (quoting Patel v. Texas Tech University, 941 F.3d 743, 746 (5th Cir. 2019)); see also Fed. R. Civ. P. 56(c)(2).

## III. Analysis

AmGUARD argues that Frontier Medical's (1) breach of contract claim and (2) extra-contractual claims against it should be dismissed as a matter of law.[23]

### A. Breach of Contract (Count 3)

Frontier Medical asserts that AmGUARD's denial of its insurance claim constitutes a breach of contract. "In a claim for breach of an insurance contract, Texas law requires the insured to prove: '(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" Advanced Indicator and Manufacturing, Inc. v. Acadia Insurance Company, 50 F.4th 469, 476 (5th Cir. 2022) (per curiam) (quoting Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C., 892 F.3d 167, 170 (5th Cir. 2018)).

AmGUARD argues that there is no genuine issue of material fact to support Frontier Medical's breach of contract claim because Frontier Medical has failed to establish (1) that the covered losses exceed its policy deductible, (2) that the damages are covered under its insurance

---

[23]AmGUARD's MSJ, Docket Entry No. 28, pp. 11-15, 16-17.

policy, and (3) that the concurrent causation doctrine does not bar recovery.[24] AmGUARD also argues that Frontier Medical has failed to present evidence of the legally recoverable measure of damages.[25]

1. Deductible

To succeed on a breach of contract claim Frontier Medical must establish that the covered damage exceeded its deductible. Guzman v. State Farm Lloyds, 456 F.Supp.3d 846, 856 (S.D. Tex. 2020). The record establishes that two different weather events are at issue in this case: the Derecho that occurred on May 16, 2024, and Hurricane Beryl, which occurred on July 8, 2024. AmGUARD argues that because Frontier Medical cannot distinguish which damages were caused by the Derecho and which damages were caused by Hurricane Beryl, Frontier Medical cannot produce evidence that the covered damages attributable to the storms each individually exceeded the policy deductible of $153,623.10.[26]

Despite AmGUARD's assertions to the contrary, Frontier Medical need only establish that the damage from the Derecho exceeded the policy deductible. Although Frontier Medical alleges that Hurricane Beryl resulted in additional damage to the property,[27] its breach of contract claim is based solely on the denial of its claim for the damage caused by the Derecho.[28] In other words,

---

[24]AmGUARD's MSJ, Docket Entry No. 28, pp. 11-15; AmGUARD's Reply, Docket Entry No. 33, pp. 2-5.

[25]AmGUARD's MSJ, Docket Entry No. 28, pp. 12-15; AmGUARD's Reply, Docket Entry No. 33, pp. 4-5.

[26]AmGUARD's MSJ, Docket Entry No. 28, pp. 11-12.

[27]Amended Complaint, Docket Entry No. 13, p. 4 ¶ 13.

[28]Id. at 8 ¶ 23 ("The investigation revealed that the May Derecho impacted the roof and building from high winds, hail and wind driven rain, weakening the structure and creating the (continued...)

Frontier Medical's claim is based on damage that was already present before Hurricane Beryl occurred. To support this assertion, Frontier Medical submits the testimony of its expert, James D. Irmiter, a Senior Consultant at Forensic Building Science, Inc. ("FBS").[29] After conducting an inspection of the property, Irmiter concluded that the roof damage and water leaks were solely the result of wind damage from the Derecho.[30] Irmiter "observed only damage that appeared to have been caused by the Derecho" and concluded that he "saw no damage that appeared to be caused by Hurricane Beryl but not the Derecho event."[31] In coming to this conclusion, Irmiter noted that although "Beryl . . . occur[red] after the Derecho, the Derecho had much stronger winds [and therefore the Derecho] would have been the most likely cause of that [damage]."[32] Irmiter's report explains that "storm events prior to the weather event on May 16, 2024, or after May 16, 2024, and

---

[28](...continued)
opportunity for water damage that was identified following the June storms which was exacerbated by Hurricane Beryl . . . ."); Frontier Medical's Response, Docket Entry No. 32, pp. 9, 12-15 ("Frontier asserts that AmGUARD breached the Policy because it failed to pay benefits due on account of damage caused by the Derecho."); Declaration of James D. Irmiter ("Irmiter Declaration"), Exhibit 2 to Frontier Medical's Response, Docket Entry No. 32-3, p. 7 ¶ 20 ("[W]ater intrusion during Hurricane Beryl only occurred at locations that already sustained water damage as a result of the Derecho. Based on FBS's investigation, it is my opinion that Hurricane Beryl only exacerbated damage at the Property caused by the Derecho.").

[29]Irmiter Declaration, Exhibit 2 to Frontier Medical's Response, Docket Entry No. 32-3, p. 1 ¶¶ 1-2.

[30]See id. at 6 ¶ 16 (stating that the Derecho caused the damage involved in the expert's report); Oral (Remote) Deposition of Jim Irmiter ("Irmiter Deposition"), Exhibit 11 to Frontier Medical's Response, Docket Entry No. 32-17, p. 101 lines 13-20.

[31]Irmiter Declaration, Exhibit 2 to Frontier Medical's Response, Docket Entry No. 32-3, pp. 6-7 ¶ 19.

[32]Irmiter Deposition, Exhibit 11 to Frontier Medical's Response, Docket Entry No. 32-17, p. 52 lines 20-23.

prior to our inspections were bifurcated out of [the] damage model and [were] not included in [the] scope of repair recommendations."[33]

AmGUARD argues that Irmiter's statements are conclusory, unsubstantiated assertions that are insufficient to raise a fact issue.[34] However, in his report Irmiter explained his background, the basis for his findings, and ruled out other causes of loss.[35] Specifically, Irmiter based his findings on weather data from the past ten years, the new age of the roof, the wind speeds of the Derecho, the appearance of pervasive leaks, and the building's history.[36] Courts within the Fifth Circuit have found similar export reports to be sufficient to raise a fact issue. See, e.g., Hub Texas, LLC v. Arch Specialty Insurance Company, CIVIL ACTION NO. 5:21-CV-180-H-BQ, 2023 WL 11859631, at *10-12 (N.D. Tex. Mar. 21, 2023) (finding that the plaintiff presented sufficient factual information supporting that a weather event was the sole cause of damage when it was based on observations including but not limited to weather data, the age of the roof, and the characteristics of the damage). The court therefore concludes that Irmiter's report is competent summary judgment evidence. AmGUARD has not challenged Irmiter's qualifications as an expert or the admissibility of his expert report under Rule 702 of the Federal Rules of Evidence. Absent such a challenge the court cannot

---

[33]Storm Damage Evaluation, Exhibit 2-B to Frontier Medical's Response, Docket Entry No. 32-5, p. 101 (emphasis added).

[34]AmGUARD's Reply, Docket Entry No. 33, p. 4.

[35]Irmiter Declaration, Exhibit 2 to Frontier Medical's Response, Docket Entry No. 32-3, pp. 3-4 ¶¶ 7-10; Storm Damage Evaluation, Exhibit 2-B to Frontier Medical's Response, Docket Entry No. 32-5, pp. 10-15 (explaining methodology and ruling out other weather events for the cause of loss).

[36]Frontier Medical's Response, Docket Entry No. 32, pp. 13-14; Irmiter Deposition, Exhibit 11 to Frontier Medical's Response, Docket Entry No. 32-17, p. 79 line 3 thru p. 80 line 8.

weigh the credibility of Frontier Medical's expert's report or affidavit. Pearson v. Specialized Loan Servicing LLC, Civil Action No. 4:20-cv-04044, 2020 WL 10981896, at *2 (S.D. Tex. Dec. 16, 2020) ("In deciding a motion for summary judgment, the Court cannot properly make findings on disputed issues of fact. It cannot weigh evidence. If evidence must be weighed, then it must be weighed at trial . . . .").

Because Frontier Medical presents evidence that the Derecho was the sole cause of the damage at issue in this case and because Frontier Medical produced evidence that the Derecho caused $1,870,586.87 in damages, Frontier Medical has raised a fact issue as to whether the covered damage exceeded its deductible of $153,623.10.

2. Claims Covered by the Policy

To establish a breach of contract claim, Frontier Medical must show that it "filed an insurance claim for losses that are covered by [its] policy." Guzman, 456 F.Supp.3d at 856. AmGUARD argues that Frontier Medical has failed to produce evidence that the property was damaged by wind and that the water leaks were caused by a wind-created opening in the roof.[37] The Fifth Circuit, addressing a similar argument, has explained what evidence is sufficient to raise a fact issue as to whether losses came from a covered cause:

---

[37]AmGUARD's Reply, Docket Entry No. 33, p. 2. Although AmGUARD states in its Reply that it is only moving for summary judgment on the breach of contract claim based on the fact that Frontier Medical failed to produce evidence that the claimed damages are covered under its policy, it is unclear whether AmGUARD's MSJ raises this argument. There is only one mention of uncovered damages in AmGUARD's MSJ. See AmGUARD's MSJ, Docket Entry No. 28, pp. 11-12 (asserting that "[Frontier Medical] does not have evidence supporting covered damages (from storm-created opening)"). The remainder of AmGUARD's arguments regarding Frontier Medical's breach of contract claim are dedicated to segregation and damages. See id. at 11-15. Nonetheless, out of an abundance of caution the court will address whether the claimed damages are covered under Frontier Medical's policy.

> The question before us is whether Advanced has put forth sufficient summary judgment evidence to create a disputed issue of material fact regarding whether the damage to the building came from a covered cause, here, wind from Hurricane Harvey. We hold that it has. Specifically, Advance points to the testimony of Thomas Ross, a public adjuster, who stated that the roofing system "completely failed," and that the damage was "absolutely" caused only by the hurricane. De la Mora, Advanced's expert, also testified at his deposition that the damage was caused by Hurricane Harvey. Finally, the record contains previous reports demonstrating that the building was in good shape. Viewing this evidence in the light most favorable to Advanced, a reasonable jury could find that Hurricane Harvey's winds were the cause of the damage to the building. To be sure, Acadia offers evidence to the contrary. But this evidence serves only to create a factual dispute.

Acadia Insurance Company, 50 F.4th at 476.

Neither party disputes that Frontier Medical's policy covered wind damage from November 5, 2023, to November 5, 2024.[38] To establish that the damage was covered by its policy Frontier Medical points to the testimony of its expert, Irmiter. As discussed above, after conducting an inspection of the property, Irmiter concluded that the roof damage and water leaks were solely the result of wind damage from the Derecho.[39] Irmiter ruled out Hurricane Beryl and faulty roof installation as the source of the damage, noting that the minor repairs that were performed on the property's roof following the roof's replacement in 2021 "were sufficient to remedy the minor, localized issue they were intended to address," and that there was no "evidence indicative of other defects to the roof's installation."[40] Just as in Acadia Insurance Company, the record establishes that

[38]Frontier Medical's Response, Docket Entry No. 32, p. 10; AmGUARD's MSJ, Docket Entry No. 28, p. 6; Amended Complaint, Docket Entry No. 13, pp. 2-3 ¶ 6.

[39]Irmiter Declaration, Exhibit 2 to Frontier Medical's Response, Docket Entry No. 32-3, pp. 5-6 ¶ 12, p. 6 ¶¶ 16, 19; Irmiter Deposition, Exhibit 11 to Frontier Medical's Response, Docket Entry No. 32-17, p. 101 lines 13-20.

[40]Irmiter Declaration, Exhibit 2 to Frontier Medical's Response, Docket Entry No. 32-3, p. 6 ¶ 15.

the building was in good shape after the 2021 roof repairs and before the Derecho in 2024.[41] Although AmGUARD presents evidence that the damage was caused by a defective roof installation,[42] this evidence serves only to create a factual dispute.[43]

Viewing this evidence in light most favorable to Frontier Medical, a jury could reasonably find that the Derecho's winds were the cause of the damage to Frontier Medical's property.

3. Concurrent Causation Doctrine

AmGUARD next argues that Frontier Medical's breach of contract claim fails as a matter of law because Frontier Medical failed to segregate damages between the two storms and failed to segregate between covered and excluded causes.[44] Under the concurrent causation doctrine, "'when covered and non-covered perils combine to create a loss, the insured is entitled to recover that portion of the damage caused solely by the covered peril.' 'Because an insured can recover only for covered events, the burden of segregating the damage attributable solely to the covered event is a coverage issue for which the insured carries the burden of proof.' 'Failure to segregate covered and noncovered perils is fatal to recovery.' An insured may carry its burden by putting forth evidence demonstrating that the loss came solely from a covered cause or by putting forth evidence by which

---

[41]Id. at 4 ¶ 9, 6 ¶ 15; Declaration of Sapram "Jack" Singh, Exhibit 1 to Frontier Medical's Response, Docket Entry No. 32-1, p. 3 ¶¶ 10-11.

[42]AmGUARD's MSJ, Docket Entry No. 28, p. 13.

[43]AmGUARD argues that Irmiter's report is not sufficient to raise a fact issue as to whether the damage was covered by the policy. However, as discussed above, the court concludes that Irmiter's report is competent summary judgment evidence.

[44]AmGUARD's MSJ, Docket Entry No. 28, pp. 12-14. AmGUARD states in its Reply that it is not arguing the concurrent causation doctrine. AmGUARD's Reply, Docket Entry No. 33, p. 1. However, AmGUARD devotes multiple pages of its MSJ to the doctrine. AmGUARD's MSJ, Docket Entry No. 28, pp. 12-14. The court will therefore address this argument.

a jury may reasonably segregate covered and non-covered losses." Acadia Insurance Company, 50 F.4th at 476-77 (citations omitted).

Frontier Medical has presented evidence demonstrating that all of the claimed damage resulted from a covered cause, the Derecho. Id.; see Hub Texas, LLC, 2023 WL 11859631, at *10-12. "[T]he same evidence that supports [Frontier Medical's] argument that [the Derecho] caused some of its damage supports its argument that [the Derecho] caused all of the damage." Id. at 477 (emphasis in original). This evidence is sufficient to raise a fact issue that the damage at issue was caused solely by the Derecho. Additionally, as discussed above, Irmiter's report states that "[d]amage that was caused by (1) improper or deferred maintenance, (2) foot traffic on the roofs, (3) improper installation, (4) wear and tear, (5) construction or design defects, (6) defective products, or (7) storm events prior to the weather event on May 16, 2024, or after May 16, 2024, and prior to our inspections were bifurcated out of [the] damage model and not included in [the] scope of repair recommendations."[45]

Because Frontier Medical has presented evidence demonstrating that all of the claimed damage resulted from the Derecho, "a jury could reasonably find that all of [Frontier Medical]'s loss comes from a covered cause, [and that] the concurrent causation doctrine does not bar recovery." Acadia Insurance Company, 50 F.4th at 477.

4. Damages

Frontier Medical's $1,870,586.87 estimate calls for a full roof replacement.[46] AmGUARD argues that Frontier Medical is seeking the wrong contractual measure of damages because Frontier

---

[45]Storm Damage Evaluation, Exhibit 2-B to Frontier Medical's Response, Docket Entry No. 32-5, p. 101 (emphasis added).

[46]AmGUARD's MSJ, Docket Entry No. 33, pp. 4-5.

Medical does not present evidence of a full roof failure.[47] However, in his deposition, Irmiter explained in detail that he concluded that "[t]he roof had to be replaced" due to the extensive wind damage from the Derecho.[48]

For the reasons explained above, Frontier Medical has raised a fact issue as to whether AmGUARD breached its contract by denying coverage for Frontier Medical's claim for damage to its property from the Derecho. Accordingly, AmGUARD's MSJ on this claim will be denied.

**B. Extra-Contractual Claims**

Frontier Medical alleges several extra-contractual claims against AmGUARD including violations of Chapters 541 and 542 of the Texas Insurance Code (Counts 1 and 2), a claim for statutory interest (Count 4), a breach of duty of good faith and fair dealing claim (Count 5), a claim for punitive damages (Count 6), and violations of the DTPA (Count 7).[49] AmGUARD argues that each of these claims fail as a matter of law because no breach of contract occurred and Frontier Medical cannot establish an independent injury to support its extracontractual claims.[50] As discussed above, Frontier Medical has raised a genuine issue of material fact as to its contractual claim. AmGUARD is therefore not entitled to summary judgment on that basis, and the court need not make a finding as to whether Frontier Medical can establish an independent injury.

---

[47]Id.

[48]Irmiter Deposition, Exhibit 11 to Frontier Medical's Response, Docket Entry No. 32-17, p. 155 lines 9-21, p. 164 line 12 thru p. 166 line 17.

[49]Amended Complaint, Docket Entry No. 13, pp. 10-14 ¶¶ 30-54.

[50]AmGUARD's MSJ, Docket Entry No. 28, pp. 16-23.

AmGUARD alternatively argues that even if a breach of contract occurred, each of Frontier Medical's claims fail as a matter of law.[51]

1. Chapter 541 of the Texas Insurance Code (Count 1), Good-Faith-and-Fair Dealing Claim (Count 5), and the DTPA (Count 7)

Frontier Medical alleges that AmGUARD violated §§ 541.060(a)(2)(A), (a)(3), and (a)(7), and 541.061(1)–(3).[52] AmGUARD argues that each of these claims fail as a matter of law.[53]

Because a good-faith-and-fair dealing claim and a claim under the DTPA require the same showing as a claim under §§ 541.060(a)(2)(A) and (a)(7), the court will address them together. Hansen v. State Farm Lloyds, Civil Action No. 4:22-CV-03833, 2025 WL 963079, at *6 (S.D. Tex. Mar. 28, 2025); Tri Investments, Inc. v. United Fire & Casualty Co., 553 F.Supp.3d 400, 406 (S.D. Tex. Mar. 31, 2020) (stating that when evaluating "'extra-contractual tort claims' like those brought under the DTPA," the Fifth Circuit applies the "same, high standard" as it does to allegations of bad faith.).

---

[51]Id.

[52]Frontier Medical's Response, Docket Entry No. 32, p. 15. The court concludes that Frontier Medical has waived its claims under §§ 541.061(1)-(3) because it failed to respond to the challenges to these claims raised in AmGUARD's MSJ. Parkman v. W&T Offshore, Inc., 673 F.Supp.3d 811, 824 (M.D. La. May 18, 2023) ("Where a party fails to substantively oppose dismissal of a claim, the claim may be deemed waived.").

[53]AmGUARD's MSJ, Docket Entry No. 28, pp. 17-23. Frontier Medical argues that AmGUARD is not entitled to summary judgment on Frontier Medical's claims under §§ 541.060(a)(2)(A), (a)(3), and (a)(7), because AmGUARD failed to address them in its MSJ. Given the overlap in the factual and legal analyses of Frontier Medical's breach of duty of good faith and fair dealing claim and misrepresentation claims, the court concludes that AmGUARD's challenge to that claim is sufficient to raise the issue of whether it is entitled to summary judgment on Frontier Medical's claims under §§ 541.060(a)(2)(A), (a)(3), and (a)(7). Robles v. Eminent Medical Center, LLC, 619 F.Supp.3d 609, 626 (N.D. Tex. Aug. 3, 2022).

a. Frontier Medical's Claims Under §§ 541.060(a)(2)(A) and (a)(7), the DTPA, and Claim for Breach of Duty of Good Faith and Fair Dealing

Frontier Medical argues that AmGUARD violated §§ 541.060(a)(2)(A) and (a)(7) by failing to perform a reasonable investigation because despite the extensive damage noted by the adjuster, the adjuster determined that the property did not suffer any wind damage or storm created openings.[54] Frontier Medical points to its expert report to establish that the damage was indeed caused by wind damage or storm created openings.[55] Frontier Medical also argues that the adjuster's report contains errors.[56]

Frontier Medical's claims under §§ 541.060(a)(2)(A) and (a)(7) "require the same showing as [a] good-faith-and-fair dealing claim: that [AmGUARD] lacked a reasonable basis for its coverage decision." Hansen, 2025 WL 963079, at *6; see also Erazo v. State Farm Lloyds, Civil Action No. H-23-1965, 2024 WL 2805328, at *4 (S.D. Tex. May 31, 2024), report and recommendation adopted, 2024 WL 2806177 (S.D. Tex. May 31, 2024) ("A plaintiff may sue for breach of the duty of good faith and fair dealing if their insurer denies or delays their claim without any reasonable basis for the denial or delay in the processing of claims."). "The elements of a bad faith claim are that: (1) the insurer had no reasonable basis for the denial or delay in payment of a claim; and (2) the insurer knew or should have known of that fact." Murray v. Allstate Vehicle & Property Insurance Co., Civil Action No, 24-1773, 2025 WL 1095098, at *4 (S.D. Tex. Apr. 11, 2025) (internal quotation marks omitted). "[C]ourts have consistently held that a bona fide coverage dispute is not

---

[54]Frontier Medical's Response, Docket Entry No. 32, p. 19.

[55]Id.

[56]Id.

evidence of an insurer's unreasonableness." Erazo, 2024 WL 2805328, at *4. "That said, an insurer cannot escape liability by failing to investigate a claim so that it can contend that liability was never reasonably clear; it breaches the duty of good faith and fair dealing by failing reasonably to investigate a claim." Guerrero v. State Farm Lloyds, CIVIL ACTION NO. 1:24-CV-00032-MAC-CLS, 2025 WL 760039, at *5 (E.D. Tex. Feb. 19, 2025), report and recommendation adopted, 2025 WL 756003 (Mar. 7, 2025). "The reasonableness of an insurer's actions must be judged by the facts before the insurer at the time the claim was denied." Hansen, 2025 WL 963079, at *5 (internal quotation marks omitted).

AmGUARD's coverage decision was based on "multiple inspections" by its field adjuster and "reviewing engineering reports."[57] The results of the inspections and reports, if believed, would justify denial of the claim. Hansen, 2025 WL 963079, at *5. This provides a reasonable basis for AmGUARD's conclusion as to the covered loss amount.

"The burden [therefore] shifts to [Frontier Medical] to present evidence showing a genuine dispute about whether [AmGUARD] lacked a reasonable basis for its decision or conducted an unreasonable, outcome-driven investigation." Hansen, 2025 WL 963079, at *5. Frontier Medical argues that the massive difference in the result of AmGUARD's inspection and Frontier Medical's expert's inspection creates a fact issue as to whether AmGUARD conducted a reasonable investigation.[58] To support its argument Frontier Medical merely relies on its expert's competing conclusions about the causation of the damage. However, Irmiter's report "amounts to nothing more than a competing expert report that does not cast any doubt on [AmGUARD's] inspection."

---

[57]AmGUARD's MSJ, Docket Entry No. 28, p. 22.

[58]Frontier Medical's Response, Docket Entry No. 32, p. 20.

Guerrero, 2025 WL 760039, at *6 ("If, however, either Ruston or Allen had opined that Bush's damages determination, as opposed to their own, was, for example, 'impossible' or 'physically impossible,' then there may exist a genuine factual dispute as to whether Bush's investigation was reasonable."). "'The fact that qualified experts on each side of this case disagree about whether the damage to the [Property] was caused by [wind] is further evidence that this case is, at heart, a bona fide coverage dispute, not one of bad faith.'" Id. at *5 (citations omitted).

Frontier Medical also argues that the errors contained in AmGUARD's report, that the observation that the property's roof was in poor condition and that it was only one layer thick, create a fact issue as to whether AmGUARD conducted a reasonable investigation.[59] However, to raise a fact issue as to whether the investigation was reasonable based on errors, "[Frontier Medical] must provide evidence showing not just that [AmGUARD's report] was inaccurate, but that the error in the [adjuster's] investigation 'is of such magnitude as to affirmatively cast doubt on [AmGUARD's] basis for denial.'" Jesus Church of Victoria Texas, Inc. v. Church Mutual Insurance Co., Civil Action No. 6:19-CV-00093, 2022 WL 4238089, at *9 (S.D. Tex. Sept. 13, 2022) (quoting Thompson v. Zurich American Insurance Co., 664 F.3d 62, 68 (5th Cir. 2011)). Frontier Medical has failed to do so. "At most, this evidence shows a genuine dispute as to whether the [adjuster]'s [r]eport's conclusion about [the roof] was correct, not that it wasn't 'objectively prepared or the insurer's reliance on the report was unreasonable.'" Id. (quoting State Farm Lloyds v. Nicolau, 951 S.W.2d 444, 448 (Tex. 1997)). "In other words, [Frontier Medical] has shown a 'bona fide coverage dispute.'" Id. (quoting State Farm Fire & Casualty Co. v. Simmons, 963 S.W.2d 42, 44 (Tex. 1998).

The court therefore concludes that summary judgment is appropriate on Frontier Medical's claims under §§ 541.060(a)(2)(A) and (a)(7), the DTPA, and its good-faith-and-fair dealing claim.

---

[59] Id. at 19-20.

b. Frontier Medical's Claim Under § 541.060(a)(3)

Section 541.060(a)(3) "focus[es] on the adequacy and timeliness of communications, not the reasonableness of coverage decisions." Murray, 2025 WL 1095098, at *4 (internal quotation marks omitted). "Under Section 541.060(a)(3), an insurer is liable for failing to promptly provide a policyholder a reasonable explanation of the basis in the policy . . . for the insurer's denial of a claim." Id. (internal quotation marks omitted).

The summary judgment evidence establishes that AmGUARD provided Frontier Medical with two denial letters within three months of Frontier Medical filing its claims.[60] The letters discussed the claim for equipment and building damage, explained AmGUARD's findings, cited various policy provisions, and denied the claim.[61] Frontier Medical offers no evidence that AmGUARD's explanations were unclear or unreasonable. The court therefore concludes that summary judgment is appropriate on Frontier Medical's claims under § 541.060(a)(3).

2. Chapter 542 of the Texas Insurance Code and Statutory Interest (Counts 2 and 4)

Frontier Medical alleges claims under §§ 542.055(a)(2)-(3) and 542.058(a) of the Texas Insurance Code, as well as a claim for statutory interest for violations of §§ 542.058 and 542.060 of the Texas Insurance Code.[62]

---

[60]Id. at 7; July 2, 2024, Letter to Frontier Medical, Exhibit 3 to AmGUARD's MSJ, Docket Entry No. 28-3, p. 3; September 4, 2024, Letter to Frontier Medical, Exhibit 4 to AmGUARD's MSJ, Docket Entry No. 28-4, p. 2.

[61]July 2, 2024, Letter to Frontier Medical, Exhibit 3 to AmGUARD's MSJ, Docket Entry No. 28-3; September 4, 2024, Letter to Frontier Medical, Exhibit 4 to AmGUARD's MSJ, Docket Entry No. 28-4.

[62]Amended Complaint, Docket Entry No. 13, p. 12 ¶¶ 40-43, 46-47.

Chapter 542 of the Texas Insurance Code mandates "statutory damages for failure to pay an insurance claim within a specified time if an insurer is found liable under a policy, even if the insurer had a reasonable basis for denying coverage." Performance Autoplex II Ltd. v. Mid-Continent Casualty Co., 322 F.3d 847, 861 (5th Cir. 2003) (per curiam) (interpreting the statute before it was recodified as Chapter 541 without modification). "A wrongful rejection of a claim, if reduced to judgment, can be considered a delay in payment under [Chapter 542]." Advanced Indicator and Manufacturing, Inc. v. Acadia Insurance Co., 50 F.4th 469, 477 (5th Cir. 2022) (per curiam). "Because the [c]ourt has determined that genuine issues of material fact preclude summary judgment on [Frontier Medical's] breach of contract claim, [Frontier Medical] may be entitled to relief under [Chapter 542]." Mallett v. State Farm Lloyds, Civil Action No. 4:23-CV-04159, 2025 WL 3050173, at *3 (S.D. Tex. May 23, 2025) (citing Acadia Insurance Co., 50 F.4th at 477-78). Summary judgment on Frontier Medical's Chapter 542 and statutory interest claims is therefore premature and will be denied.

3. Punitive Damages (Count 6)

Frontier Medical alleges that it is entitled to punitive damages.[63] "Every tort involves conduct that the law considers wrong, but punitive damages are proper only in the most exceptional cases. Unless bad faith is accompanied by aggravated conduct by the insurer, then compensatory damages alone are the proper remedy." Transportation Insurance Co. v. Moriel, 879 S.W.2d 10, 18 (Tex. 1994). "Under Texas law, 'exemplary damages may be awarded only if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery

---

[63] Id. at 13 ¶¶ 50-51.

of exemplary damages results from (1) fraud; (2) malice; or (3) gross negligence.'" Rooters v. State Farm Lloyds, 428 F. App'x 441, 448 (5th Cir. 2011) (quoting Tex. Civ. Prac. & Rem. Code § 41.003(a)(1)-(3)). Frontier Medical has not pointed to any statement from an affidavit or deposition, or any other summary-judgment evidence, from which a reasonable factfinder could conclude that AmGUARD acted with fraud, malice, or gross negligence. Accordingly, the court concludes that summary judgment is appropriate on Frontier Medical's punitive damage claim.

## IV. Conclusion and Order

For the reasons explained above, Defendant AmGUARD Insurance Company's Motion for Final Summary Judgment (Docket Entry No. 28) is **GRANTED in part** as to Frontier Medical's claims against AmGUARD for violating Chapter 541 of the Texas Insurance Code (Count 1), for breaching the duty of good faith and fair dealing (Count 5), for punitive damages (Count 6), and for violating the Texas Deceptive Trade Practices Act (Count 7), and **DENIED in part** as to Frontier Medical's claims for breach of contract (Count 3), violations of Chapter 542 of the Texas Insurance Code (Count 2), and for statutory interest under §§ 542.058 and 542.060 of the Texas Insurance Code (Count 4).

Accordingly, Frontier Medical's claims against AmGUARD for violating Chapter 541 of the Texas Insurance Code (Count 1), for breaching the duty of good faith and fair dealing (Count 5), for punitive damages (Count 6), and for violating the Texas Deceptive Trade Practices Act (Count 7) are **DISMISSED WITH PREJUDICE**.

Motions in Limine must be filed by December 4, 2026. Responses will be filed by December 18, 2026.

The parties are **ORDERED** to file a Joint Pretrial Order in the form required in this court's Courtroom Procedures by January 8, 2027. Docket call will be held on January 15, 2027, at 2:00 p.m.

**SIGNED** at Houston, Texas, on this the 19th day of November, 2026.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE